**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN CRUZ, | 1:06-cv-00883-OWW-DLB (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF CERTAIN CLAIMS |
| v. | |
| J. TILTON, et. al., | (Doc. 12) |
| Defendants. | |

**I.     FINDINGS AND RECOMMENDATIONS FOLLOWING SCREENING**

Brian Cruz ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis. Plaintiff originally filed his original complaint on July 11, 2006. One month later, prior to screening, Plaintiff filed his first amended complaint.

On August 19, 2008, the court issued an order finding that plaintiff's allegations give rise to cognizable claims for relief under section 1983 against defendants Cobbs, Ahlin, Saunders, Carrillo, Duvall and Cake for retaliation, and against defendants Tilton, Alameida and Adams for failure to properly train, supervise, assign and discipline prison staff, and against defendants Saunders, Ahlin, Carrillo, and Cake for failing to provide for plaintiff's security/protection. However, the court found that plaintiff's allegations do not give rise to any other claims for relief. The court ordered plaintiff to either file an amended complaint or notify the court that he wishes to proceed only on his cognizable claims. On September 18, 2008, plaintiff notified the court that he does not wish to

amend and wishes to proceed only his cognizable claims. Based on plaintiff's notice, the instant Findings and Recommendations now issues.

### A.   Screening Requirement

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that Plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), *citing* Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

### B.   Summary of Plaintiff's Complaint

Plaintiff is a state prisoner at R.J. Donovan Correctional Facility at Rock Mountain ("RJD") in San Diego, California. Plaintiff complains of acts which occurred while he was incarcerated at California Substance Abuse Treatment Facility and State Prison ("SATF") in Corcoran, California. Plaintiff names ten defendants: CDC Director J. Tilton; Past CDC Director Edward Alameida; SATF Warden Derral G. Adams; SATF Associate Warden Johnny L. Cobbs; Correctional Captain J. Ahlin; Correctional Lieutenants Jerry Saunders and Eddie J. Carrillo; Correctional Counselor and Appeals Coordinator Doris Duvall; Correctional Sergeant B. Cake; and Correctional Officer Fujioka.

1       Plaintiff alleges that he was retaliated against for his activities of filing prisoner grievances,
2   civil lawsuits, and for corresponding with elected public officials regarding the conditions and
3   situations that occurred at SATF.
4       The Plaintiff seeks monetary damages.
5       It should be noted that Plaintiff's first amended complaint is complex, voluminous, and
6   difficult to decipher. The entire first amended complaint is written in capital letters with two rows
7   of writing in approximately one quarter inch of vertical space. Further, Plaintiff has organized his
8   first amended complaint in a manner so as to make it extremely difficult for the Court to ascertain
9   which facts Plaintiff believes support each of his alleged claims for relief. Specifically, Plaintiff
10  states a "CHRONOLOGICAL HISTORY OF VIOLATIONS" on pages 6 through 17, and thereafter
11  delineates claims for relief, which incorporate all preceding factual allegations and variously sub-list
12  multiple conclusory statements of constitutional violations. The Court provides Plaintiff with the
13  following law that appear to apply to his delineated claims for relief. However, it is Plaintiff's duty
14  to specify his claims for relief and their factual basis against each named defendant. The Court will
15  not guess as to which facts Plaintiff believes support his alleged constitutional violations.

  **C.**   **Pleading Requirements**

    **1.** *Federal Rule of Civil Procedure 8(a)*

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a). Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. Pro. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Id. at 514. "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.'" Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003) (quoting Scheuer v. Rhodes, 416 U.S.

232, 236 (1974)); see also Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the claim . . . .'" (quoting Fontana v. Haskin, 262 F.3d 871, 977 (9th Cir. 2001))). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

### 2. *Federal Rule of Civil Procedure 18(a)*

"The controlling principle appears in Fed.R.Civ.P. 18(a) 'A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.' Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

Plaintiff is advised that if he chooses to file an amended complaint, and fails to comply with Rule 18(a), the Court will count all frivolous/noncognizable unrelated claims that are dismissed therein as strikes such that he may be barred from filing in forma pauperis in the future.

### 3. *Linkage Requirement*

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell

4

v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). In order to state a claim for relief under section 1983, Plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights.

### D.    Claims for Relief

#### 1. *Plaintiff's First Claim for Relief – First Amendment, Retaliation*

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

Plaintiff alleges that defendants Cobbs, Ahlin, Saunders, Carrillo, Duvall, and Cake retaliated against him for filing prisoner grievances, civil lawsuits, and corresponding with elected public officials by: (1) threatening to harm, punish, injure, and harass Plaintiff; (2) excessive cell searches; (3) filing fraudulent disciplinary charges to retain him in segregated housing; (4) instigating Plaintiff's assault by another inmate; (5) fraudulently inflating Plaintiff's points to ensure his retention in maximum security and significantly lengthening his sentence; (6) permitting the loss, theft, or destruction of Plaintiff's property; (7) fraudulently manipulating Plaintiff's classification; (8) failing to properly process Plaintiff's complaints; (9) engaging in acts of intimidation against Plaintiff. Plaintiff has thus alleged cognizable claims for unconstitutional retaliation against

5

1  defendants Cobbs, Ahlin, Saunders, Carrillo, Duvall, and Cake ("the Six Retaliating Defendants").

2  Plaintiff further alleges, under his First Claim for Relief, that defendants Tilton, Alameida,
3  Adams, and certain Does ("the Supervisorial Defendants") are liable for the retaliatory acts of the
4  Six Retaliating Defendants. Plaintiff alleges that the Supervisorial Defendants were on notice of,
5  and deliberately indifferent to, the unconstitutional misconduct by prison staff (via numerous inmate
6  grievances and Plaintiff's letters to each of the Supervisorial Defendants) and that they failed to
7  properly train, supervise, assign, and discipline prison staff which resulted in defacto policies,
8  customs and practices which were the motivating factors behind the actions of the Six Retaliating
9  Defendants.

10  Plaintiff is entitled to an inference at the summary judgment stage (and therefore also at the
11  pleading stage) that prison administrators are liable for deliberate indifference when they knowingly
12  fail to respond to an inmate's requests (i.e. letters) for help. See Jett v. Penner 439 F.3d 1091, 1098
13  (9th Cir. 2006) citing Estelle v. Gamble, 429 U.S. 97, 104 (1976); Greeno v. Daley, 414 F.3d 645,
14  652-53 (7th Cir.2005); and Moore v. Jackson, 123 F.3d 1082, 1087 (8th Cir. 1997). Thus, Plaintiff's
15  allegations that the Supervisorial Defendants were deliberately indifferent when they failed to
16  respond to Plaintiff's correspondence regarding the retaliatory activities of the Six Retaliating
17  Defendants are sufficient to state a cognizable claim against defendants Tilton, Alameida, and
18  Adams.

19  In City of Canton, Ohio v. Harris, 489 U.S. 378 (1989), the Supreme Court held that, under
20  certain circumstances, a municipality may be held liable based on the failure to train its employees.
21  This Court finds no authority for the extension of City of Canton and its progeny to a state prison
22  official being sued in their personal capacity. It appears to this Court, following a review of the
23  relevant case law, that the cases involving failure to train are limited to suits against city and county
24  entities. This is not to say that Plaintiff cannot allege facts involving the failure to train that are
25  sufficient to state a claim under a theory of supervisory liability, but he has failed to do allege
26  anything more than general/conclusory failure to train allegations in his first amended complaint.

27  Supervisory personnel are generally not liable under section 1983 for the actions of their
28  employees under a theory of respondeat superior and, therefore, when a named defendant holds a

6

supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Plaintiff alleges cognizable claims against defendants Tilton, Alameida, and Adams for failing to properly train, supervise, assign, and discipline prison staff which resulted in defacto policies, customs and practices which were the motivating factors behind the actions of the Six Retaliating Defendants.

### 2. *Plaintiff's Second Claim for Relief – Eighth Amendment*
#### a. *Conditions of Confinement*

Plaintiff's Second Claim for Relief entails alleged violation(s) of his rights under the Eight Amendment regarding the conditions of his confinement.

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain . . . ." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Id.; Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982). Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official

must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ." Farmer, 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. Id. at 837-45. Prison officials may avoid liability by presenting evidence that they lacked knowledge of the risk, or by presenting evidence of a reasonable, albeit unsuccessful, response to the risk. Id. at 844-45. Mere negligence on the part of the prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. Id. at 835; Frost, 152 F.3d at 1128.

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishment Clause depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. at 8 (quotations and citations omitted). "[E]xtreme deprivations are required to make out a[n] [Eighth Amendment] conditions-of-confinement claim." Id. at 9 (citation omitted). With respect to this type of claim, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Id. (quotations and citations omitted).

Under his Second Claim for Relief, Plaintiff alleges that he was retained in holding cages handcuffed, "without toilet facilities, or water for up to five hours at a time." Doc. 3, pg. 19. This time in a holding cage is insufficient to state a cognizable claim regarding the conditions of his confinement as temporarily unconstitutional conditions of confinement do not rise to the level of constitutional violations. See Anderson v. County of Kern 45 F.3d 1310 (9th Cir. 1995) and Hoptowit v. Ray 682 F.2d 1237 (9th Cir. 1982). Plaintiff does not state how many times he was retained in a holding cell while handcuffed, without toilet facilities, or water; the length of each such episode; nor the lapse of time between each such episode.

Plaintiff further alleges that he was placed in indeterminate punitive segregation as arbitraty punishment for some 459 days, and that the living conditions forseeably caused him mental anguish, stress, sensory deprivation, and mental health deterioration.

A prisoner has no liberty interest in freedom from state action taken within the sentence imposed. Sandin v. Conner, 515 U.S. 472 (1995). The Ninth Circuit explicitly has found that administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence. "It is plain, that the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence. Accordingly, administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." Toussaint v. McCarthy, 801 F.2d 1080, 1091-92 (9th Cir.1986). After a prisoner has been placed in administrative segregation, prison officials must periodically review the initial placement. See Hewitt v. Helms, 459 U.S. 460, 477 n.9; and Touissaint 801 F.2d at 1101. Annual review of the placement is insufficient, see Touissaint 801 F.2d at 1101, but a court may not impose a 90-day review period where prison officials have suggested a 120-day review period. See Touissaint v. McCarthy, 926 F.2d 800, 803 (9th Cir. 1991).

Plaintiff fails to allege whether he received periodic placement reviews. Plaintiff further fails to allege what, if anything, he feels was unconstitutional about his conditions of confinement in "punitive segregation." Thus, Plaintiff fails to state a cognizable claim regarding his retention and the conditions of his confinement in punitive segregation.

### b. Failure to Protect/Safety

Plaintiff's Second Claim for Relief also alleges violation(s) of his rights under the Eight Amendment regarding the defendants' failure to provide for his safety/protection.

"The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citing Helling v. McKinney, 509 U.S. 25, 31 (1993)). Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982); Farmer, 511 U.S. at 833. To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent to a serious threat to the inmates's safety." Farmer v. Brennan, 511 U.S. at 834. The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious

9

damage to his future health ... .'" Farmer v. Brennan, 511 U.S. 825, 843 (1994) (citing Helling v. McKinney, 509 U.S. 25, 35 (1993)). The Supreme Court has explained that "deliberate indifference entails something more than mere negligence ... [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." Farmer, 511 U.S. at 835, 114 S.Ct. 1970. The Court defined this "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." Id. at 836-37, 114 S.Ct. 1970.

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Farmer, 511 U.S. at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." Id. at 837.

The Supreme Court has stated that a remedy for unsafe conditions need not await a tragic event. Where a risk/injury has yet to occur, the plaintiff's burden would be to prove that his future health/safety is unreasonably endangered, "that it is contrary to current standards of decency for anyone to be so exposed against his will, and that prison officials are deliberately indifferent to his plight." Helling, 509 U.S. at 33-35.

Further, Eighth Amendment claims have been correctly rejected where a prisoner had not been retaliated against *and* had not alleged *any* basis to infer that the defendant was aware his actions had exposed plaintiff to a substantial risk of serious harm. Morgan v. MacDonald, 41 F.3d 1291, 1293-94 (9th Cir. 1994). In Morgan, the prisoner alleged that the director stated that if Morgan's Fair Labor Standards Act claim was successful, inmate co-workers would have to be fired, but he failed to address both the objective prong (that he had been retaliated against by other inmate co-workers, or that there was a substantial risk of serious harm to his future health/safety as a result of the statement), and the subjective prong (any basis to infer that the director was aware that his statement exposed Morgan to a substantial risk of serious harm).

Thus, in order to state a cognizable claim against prison officials for failure to provide for a prisoner's safety/protection, a prisoner must allege (and eventually prove): (1) a sufficiently serious risk of harm (either current or future); (2) that was caused by the defendant(s); and (3) that the defendant(s) knew that his/her action(s) exposed the prisoner to that serious risk of harm.

Plaintiff alleges that he was attacked by another inmate, and that the attack was instigated by defendants Saunders, Ahlin, Carrillo, and Cake. Doc. 3, pp. 8 & 19-20. This is a cognizable claim under the Eighth Amendment against defendants Saunders, Ahlin, Carrillo, and Cake for failing to provide for Plaintiff's security/protection.

### 4. *Plaintiff's Third Claim for Relief*

Plaintiff's Third Claim for Relief really appears as a catch-all claim wherein Plaintiff states various legal nomenclature, without specifying against which defendants his allegations are directed and their factual basis. Thus, the Court provides the standards for the various constitutional violations Plaintiff refers to, and Plaintiff, if he chooses to file an amended complaint, will have to explicitly state which defendant(s) he is charging and the specific facts upon which he alleges each defendant(s) violated his constitutional right(s).

#### a. Equal Protection

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). An equal protection claim may be established in two ways. First, a plaintiff establishes an equal protection claim by showing that the defendant has intentionally discriminated on the basis of the plaintiff's membership in a protected class. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir.2001). Under this theory of equal protection, the plaintiff must show that the defendants' actions were a result of the plaintiff's membership in a suspect class, such as race. Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005).

If the action in question does not involve a suspect classification, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); San Antonio School District v. Rodriguez, 411 U.S. 1 (1972); Squaw Valley Development Co. v. Goldberg, 375 F.3d 936, 944 (9th Cir.2004); SeaRiver Mar. Fin. Holdings, Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir. 2002). To state an equal protection claim under this theory, a plaintiff must allege that: (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no

rational basis for the difference in treatment. Village of Willowbrook, 528 U.S. at 564. If an equal protection claim is based upon the defendant's selective enforcement of a valid law or rule, a plaintiff must show that the selective enforcement is based upon an "impermissible motive." Squaw Valley, 375 F.3d at 944; Freeman v. City of Santa Ana, 68 F.3d 1180, 1187 (9th Cir.1995).

### b. Due Process

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Id. at 563-71. As long as the five minimum Wolff requirements are met, due process has been satisfied. Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994).

"When prison officials limit a prisoner's right to defend himself they must have a legitimate penological interest." Koenig v. Vannelli, 971 F.2d 422, 423 (9th Cir. 1992) (per curiam) (concluding that prisoners do not have a right to have an independent drug test performed at their

own expense). The right to call witnesses may legitimately be limited by "the penological need to provide swift discipline in individual cases . . . [or] by the very real dangers in prison life which may result from violence or intimidation directed at either other inmates or staff." Ponte v. Real, 471 U.S. 491, 495 (1985); see also Mitchell v. Dupnik, 75 F.3d 517, 525 (9th Cir. 1996); Koenig, 971 F.2d at 423; Zimmerlee v. Keeney, 831 F.2d 183, 187-88 (9th Cir. 1987)(per curiam).

"[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board . . . ." Hill, 472 U.S. at 455; see also Touissaint v. McCarthy, 926 F.2d 800, 802-03 (9th Cir. 1991); Bostic v. Carlson, 884 F.2d 1267, 1269-70 (9th Cir. 1989); Jancsek, III v. Oregon bd. Of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987); see especially Burnsworth v. Gunderson, 179 F.3d 771, 774-74 (9th Cir. 1999) (where there is no evidence of guilt may be unnecessary to demonstrate existence of liberty interest.) "Some evidence" must support the decision of the hearing officer. Superintendent v. Hill, 472 U.S. 445, 455 (1985). The standard is not particularly stringent and the relevant inquiry is whether "there is *any* evidence in the record that could support the conclusion reached . . . ." Id. at 455-56 (emphasis added). However, the "some evidence" standard does not apply to original rules violation report where a prisoner alleges the report is false. Hines v. Gomez, 108 F.3d 265, 268 (9th Cir. 1997).

### *c. Conspiracy*

A conspiracy claim brought under section 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

The federal system is one of notice pleading, and the court may not apply a heightened pleading standard to plaintiff's allegations of conspiracy. Empress LLC v. City and County of San Francisco, 419 F.3d 1052, 1056 (9th Cir. 2005); Galbraith v. County of Santa Clara, 307 F.3d 1119,

1126 (2002). However, although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007) (citations omitted). A plaintiff must set forth "the grounds of his entitlement to relief[,]" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." Id. at 1964-65 (internal quotations and citations omitted). As such, a bare allegation that defendants conspired to violate plaintiff's constitutional rights will not suffice to give rise to a conspiracy claim under section 1983.

### d. Loss of Good Time Credits

A deprivation that affects the duration of a prisoner's sentence, such as the loss of good time credits may, in some circumstances, implicate due process concerns. Sandin v. Conner, 515 U.S. 472, 477 (1995) (citing with approval Wolff v. McDonnell, 418 U.S. 539, 557 (1974) (state-created interest in shortened prison sentence is an interest of "real substance")). Such a liberty interest is limited to circumstances in which time credits were revoked as a disciplinary action; however, such a claim is not cognizable under § 1983 unless the result of such disciplinary action has been previously overturned or otherwise invalidated. Edwards v. Balisok, 520 U.S. 641, 645-46 (1997). Moreover, the act of revoking time credits must be distinguished from the act of limiting a prisoner's ability to prospectively earn time credits. Prisoners have no liberty interest in earning work time credits or participating in work programs. Toussaint v. McCarthy, 801 F.2d 1080, 1094-95 (9th Cir. 1986).

## II.  CONCLUSION

The court finds that plaintiff's allegations give rise to cognizable claims for relief under section 1983 against defendants Cobbs, Ahlin, Saunders, Carrillo, Duvall and Cake for retaliation, and against defendants Tilton, Alameida and Adams for failure to properly train, supervise, assign and discipline prison staff, and against defendants Saunders, Ahlin, Carrillo, and Cake for failing to provide for plaintiff's security/protection.

However, the Court finds that plaintiff's allegations do not give rise to any cognizable claims for conspiracy, nor any cognizable claims arising from his conditions of confinement in "punitive segregation", loss of good time credits, or for violation of the Equal Protection Clause or the Due

Process Clause. The court provided plaintiff with the opportunity to file an amended complaint but plaintiff opted to proceed on the claims found to be cognizable by the court. Accordingly, it is HEREBY RECOMMENDED that:

1. This action proceed only against defendants Cobbs, Ahlin, Saunders, Carrillo, Duvall and Cake for retaliation, against defendants Tilton, Alameida and Adams for failure to properly train, supervise, assign and discipline prison staff, and against defendants Saunders, Ahlin, Carrillo, and Cake for failing to provide for plaintiff's security/protection; and

2. All remaining claims be dismissed for plaintiff's failure to state a claim upon which relief may be granted.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these Findings and Recommendations, plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   October 6, 2008                          /s/ Dennis L. Beck
                                       UNITED STATES MAGISTRATE JUDGE